```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND
```

                                :
TOMASA ORELLANA
                                :
    v.                          :   Civil Action No. DKC 19-2318
                                :
ACL CLEANING, LLC d/b/a ACL
Building Services, LLC, et al.  :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this wage and hour case are two motions filed by Plaintiff Tomasa Orellana: (1) a motion for summary judgment against Defendant Edwin Aguilar Lemus, and (2) a motion for default judgment against Defendant ACL Cleaning LLC, doing business as ACL Building Services LLC ("ACL I"), and Defendant ACL General Contractors, Inc. ("ACL II"). (ECF Nos. 52; 56).  The issues have been fully briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motions will be granted.

**I.   Factual Background**

Plaintiff Tomasa Orellana attests that she was employed by ACL I as a janitor from February 4, 2019 until March 22, 2019, when she resigned because she "had not been paid any wages[.]" (ECF No. 52-2, at 6 ¶ 2 (Orellana Affidavit)).  ACL I is a Maryland business owned and managed by Mr. Aguilar Lemus.  (*See id.*, ¶¶ 5, 7; ECF No. 52-7 (Resolution to Change Office and Agent)).  He set

Ms. Orellana's pay at $10.50 an hour. (*Id.*, ¶¶ 5-6). She cleaned the common areas of the Strawberry Hill apartment complex in Baltimore. (*Id.*, ¶¶ 4, 7). Ms. Orellana "worked five days a week, Monday to Friday, from approximately 8:00 a.m. to 3:30 p.m. with a 30 minute lunch," or thirty-five hours a week. (*Id.*, ¶¶ 7-9). She "swept, cleaned windows, wiped down surfaces, picked up trash, [and] mopped the floors[.]" (*Id.*, ¶ 4).

Ms. Orellana tried to deposit her first two paychecks and "the bank rejected both checks because of insufficient funds." (ECF No. 52-2, ¶¶ 8-9). Ms. Orellana continued to work for several weeks but quit on March 22 because she still had not been paid. (*Id.*, ¶ 11). Her third and fourth paychecks also bounced. (*Id.*; *see also* ECF No. 52-3 (Checks)). In total, Ms. Orellana worked 245 hours over seven weeks, and should have been paid $2,572.50. (ECF No. 52-2, ¶ 12). In their joint answer to the original complaint, ACL I and Mr. Aguilar Lemus admitted all the facts laid out above, and also that ACL I was engaged in commerce, earning over $500,000 a year. (ECF No. 13, ¶ 1; *see* ECF No. 1). Both also failed to respond to Ms. Orellana's request for admissions. (ECF Nos. 52-1, at 6-7; 52-5; 52-6; 52-9).

Ms. Orellana alleges that ACL II is "a successor entity" to ACL I that Mr. Aguilar Lemus organized between being served in this suit and filing his answer. (ECF No. 28, ¶ 2). ACL II "provides the same services as ACL [I] to ACL [I's] former

2

clients[.]" (*Id.*). "There is no functional difference between the two entities other than the name." (*Id.*).

## II. Procedural Background

Ms. Orellana initiated this action on August 12, 2019. (ECF No. 1). The original defendants, ACL I and Mr. Aguilar Lemus, were served that same month and later answered. (ECF Nos. 3; 4; 13). In December 2020, Ms. Orellana's operative amended complaint was docketed, adding ACL II as a defendant but making no changes to the allegations against ACL I and Mr. Aguilar Lemus. (ECF No. 28). ACL II was properly served. (ECF No. 38). Ms. Orellana asserts claims for violations of: (1) the Fair Labor Standards Act ("FLSA"), (2) the Maryland Wage and Hour Law ("MWHL"), and (3) the Maryland Wage Payment and Collection Law ("MWPCL"), and for (4) breach of contract. (*Id.*, at 6-8). She requests up to $7,717.50 in unpaid wages and damages, plus expenses and attorney's fees. (*Id.*, at 7).

No Defendant answered Ms. Orellana's amended complaint. Although ACL I and Mr. Aguilar Lemus were initially represented, their attorney struck his appearance and all three Defendants now proceed without an attorney. (ECF Nos. 21; 43). The Clerk entered an Order of Default against ACL II for failure to respond to the amended complaint and against ACL I because it was not represented. (ECF Nos. 44; 46; 48). Ms. Orellana's motion for clerk's entry of default against Mr. Aguilar Lemus was denied because the

allegations against him remain unchanged from the original complaint, which he answered. (ECF No. 42, at 2).

Ms. Orellana filed the motion for summary judgment against Mr. Aguilar Lemus on July 30. (ECF No. 52). Mr. Aguilar Lemus did not respond and has long been absent from this litigation. (*See* ECF Nos. 24 (mail returned undeliverable); 50, at 1 (Plaintiff unable to confer); 52 (mail returned undeliverable). *But see* ECF No. 38 (Mr. Aguilar Lemus served)). Ms. Orellana moved for default judgment against ACL I and ACL II on November 1. (ECF No. 56).

**III. Summary Judgment Against Mr. Aguilar Lemus**

    **A.    Standard of Review**

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[S]ummary judgement should be granted only when it is perfectly clear that no issue of material fact exists." *Raynor v. Pugh*, 817 F.3d 123, 129 n.2 (4th Cir. 2016) (quotation omitted). A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Liberty Lobby*, 477 U.S. at 248. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A court must view the facts and the reasonable inferences drawn therefrom

"in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted), but "a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences," *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001).

To prevail on a motion for summary judgment, the moving party generally bears the burden of showing that there is no genuine dispute as to any material fact.  No genuine dispute of material fact exists, however, if the nonmoving party fails to make a sufficient showing on an essential element that he bore the burden to prove.  *Celotex*, 477 U.S. at 322–23.  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his responsibility to confront the summary judgment motion with an "affidavit or other evidentiary showing" demonstrating that there is a genuine issue for trial.  *See Ross v. Early*, 899 F.Supp.2d 415, 420 (D.Md. 2012), *aff'd*, 746 F.3d 546 (4th Cir. 2014).

    **B.   FLSA, MWHL, and MWPCL**

The FLSA, MWHL, and MWPCL ensure that employees are paid enough for their work.  The FLSA and the MWHL require employers to pay their employees a minimum hourly wage.  29 U.S.C. § 206(a)(1); Md. Code Ann., Lab. & Empl. § 3-413.  The MWPCL requires employers to pay their employees what they are owed regularly and in full on departure.  Md. Code Ann., Lab. & Empl. §§ 3-502(a)(1); 3-505(a).

"Read together, these statutes allow employees to recover unlawfully withheld wages from their employer, and provide an employee two avenues to do so." *See Peters v. Early Healthcare Giver, Inc.*, 439 Md. 646, 653 (2014) (citation omitted).

1. **Employer-Employee Relationship**

"[A]nalysis of the existence of an employment relationship is the same" under the FLSA, MWHL, and MWPCL, each of which look to the economic realities test. *Harbourt v. PPE Casino Resorts Md., LLC*, 820 F.3d 655, 661 n.5 (4th Cir. 2016) (citing *Campusano v. Lusitano Constr. LLC*, 208 Md.App. 29, 36-38 (2012)). That test determines whether the alleged employer had formal control by considering if it: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Campusano*, 208 Md.App. at 39-40; *see also Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 141-43 (2d Cir. 2008).

As he admitted in his answer, Mr. Aguilar Lemus was Ms. Orellana's employer "within the meaning of the FLSA, MWHL, and the MWPCL." (ECF No. 13, ¶ 1; *see* ECF No. 1, at 3). He owned and controlled ACL I and "had the ability to hire and fire" Ms. Orellana. (*See* ECF No. 1, at 3). He "set[] her work schedule[ and her] method, manner and rate of pay[.]" (*See id.*). He also "had control over the funds used to pay" Ms. Orellana. (*See id.*).

6

Ms. Orellana's attestations about Mr. Aguilar Lemus' control over the company and her comparison of the signatures on her checks to a known signature by Mr. Aguilar Lemus bolster these conclusions. (*See* ECF No. 52-2, ¶ 5; *compare* ECF No. 52-3, *with* ECF No. 52-8). Of course, Mr. Aguilar Lemus' failure to participate in this litigation makes it impossible to determine whether he maintained records, but that does not outweigh the other factors. At bottom, Mr. Aguilar Lemus admitted that the buck stopped with him.[1]

### 2. Failure to Pay Minimum Wage

The FLSA and MWHL share the same requirements. *See Schilling v. Schmidt Baking Co.*, 876 F.3d 596, 603 (4th Cir. 2017). To establish a minimum wage violation under either, a plaintiff must show that she did not receive compensation equal to or exceeding the product of the total number of hours worked a week, up to forty hours, and the statutory minimum hourly rate. *See Harbourt*, 820 F.3d at 658; *Gaither v. Davi Transp. Servs., LLC*, No. 18-cv-1447-ELH, 2020 WL 2614783, at *3-4, *9 (D.Md. May 22, 2020). "[The] plaintiff has the burden of establishing the hours [she] claims to have worked and the work [she] claims to have performed for which

---

[1] Mr. Aguilar Lemus did not respond to the operative amended complaint, but his answer to the original complaint can be used for its evidentiary value because the allegations against him were unchanged. *Liberty Mutual Ins. Co. v. SLC Constr., LLC*, No. 10-cv-4776, 2012 WL 12894736, at *4 n.2 (S.D.Tex. Apr. 13, 2012), *report and recommendation adopted*, 2012 WL 12894945 (S.D.Tex. May 14, 2012); *cf. also Goodman v. Diggs*, 986 F.3d 493, 498-99 (4th Cir. 2021).

7

[she] was not [properly] paid." *McLaughlin v. Murphy*, 436 F.Supp.2d 732, 737 (D.Md. 2005), *aff'd per curiam*, 247 F.App'x 430 (4th Cir. 2007). She need not specify the hours worked exactly, but must present enough evidence to create a "just and reasonable inference" about its amount and extent. *Id.*, at 737-38; *see also Gaither*, 2020 WL 2614783, at *7.

Mr. Aguilar failed to pay Ms. Orellana the minimum wage. Ms. Orellana attests, and Mr. Aguilar admits, that she worked 245 hours for him between February 4 and March 22, 2019. (ECF No. 52-2, ¶ 12; *see* ECF No. 1, at 5). Ms. Orellana attests, and Mr. Aguilar admits, that she worked as a janitor at the Strawberry Hill apartment complex in Baltimore. (ECF No. 52-2, ¶¶ 2, 4, 7; *see* ECF No. 1, at 4). Ms. Orellana attests, and Mr. Aguilar admits, that all four checks she received from ACL I bounced. (ECF No. 52-2, ¶¶ 9-11; *see* ECF No. 1, at 5). A complete failure to pay does not satisfy the FLSA or the MWHL.

### 3. Failure to Pay Wages Owed

The MWPCL requires that an employer "shall pay each employee at least once in every 2 weeks or twice in each month." Md. Code Ann., Lab. & Empl. § 3–502(a)(1)(ii). It also provides that "each employer shall pay an employee . . . all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." *Id.* § 3–505(a). Ms.

8

Orellana attests, and Mr. Aguilar Lemus admits, that she was promised $10.50 per hour, biweekly.  (ECF No. 52-2, ¶ 6; see ECF No. 1, at 4-5).  As noted above, Ms. Orellana attests, and Mr. Aguilar Lemus admits, that she was never paid for 245 hours of work.  A complete failure to pay does not satisfy the MWPCL.

Ms. Orellana has established that Mr. Aguilar Lemus is liable for violating her rights under the FLSA, MWHL, and MWPCL.  The sole question remaining is how much she should receive in damages.

### 4.   Damages

The FLSA, MWHL, and MWPCL all entitle employees to regular damages equal to the amount of unpaid wages owed under each law.  29 U.S.C. § 216(b); Md. Code Ann., Lab. & Empl. §§ 3-427(a)(1); 3-507.2(a).  In addition, they allow for different enhanced damages.  The FLSA and MWHL permit liquidated damages up to the amount of wages owed, or double damages in total.  29 U.S.C. § 216(b); Md. Code Ann., Lab. & Empl. § 3-427(a)(2).  The MWPCL permits liquidated damages up to twice wages owed, or treble damages, although courts may award less.  Md. Code Ann., Lab. & Empl. § 3-507.2(b); *Admiral Mortg., Inc. v. Cooper*, 357 Md. 533, 547 (2000).

Plaintiffs cannot double recover, however.  *See Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 333 (1980).  They may only recover an amount of regular damages equivalent to the wages they establish that they are owed; they cannot recover up to three times that amount by recovering under the FLSA, MWHL, and MWPCL.  And,

9

overall, they can either receive double damages under the FLSA and MWHL or treble damages under the MWPCL, "but not both." *Quiroz v. Wilhelm Com. Builders, Inc.*, No. 10-cv-2016-WGC, 2011 WL 5826677, at *3 (D.Md. Nov. 17, 2011). Ms. Orellana requests treble damages under the MWPCL or double damages under the FLSA and MWHL in the alternative. (ECF Nos. 1, at 6-7; 28, at 6-7; 52-1, at 14).

Ms. Orellana has proved that she was owed $10.50 per hour under the MWPCL, and lesser amounts under the FLSA and MWHL. Under the MWPCL, Ms. Orellana was owed $10.50 per hour. For the 245 hours of unpaid labor she provided Mr. Aguilar Lemus, Ms. Orellana is therefore entitled to $2,572.50 in regular damages.

"Enhanced damages serve the dual purposes of compensating employees for consequential losses, such as late charges or evictions that can occur when employees who are not properly paid are unable to meet their financial obligations; and of penalizing employers who withhold wages without colorable justification." *Clancy v. Skyline Grill, LLC*, No. 12-cv-1598-ELH, 2012 WL 5409733, at *8 (D.Md. Nov. 5, 2012) (alteration and quotation omitted). In this District, courts ordinarily award only double, and not treble damages, where a defendant "fails to offer any evidence of a *bona fide* dispute," but the plaintiff doesn't offer "any evidence that they suffered consequential damages[.]" *Martinez Perez v. Cheng*, No. 18-cv-3348-GJH, 2019 WL 7049688, at *5 (D.Md. Dec. 23, 2019) (citation omitted).

Ms. Orellana will be awarded treble damages under the MWPCL. There was no dispute about her wages and she offered evidence of consequential damages. Mr. Aguilar Lemus' failure to pay Ms. Orellana *any* wages also justifies a higher award. Mr. Aguilar Lemus admitted that Ms. Orellana was to be paid $10.50 an hour, that she worked 245 hours, and that she was not paid. He offered no explanation. Ms. Orellana, meanwhile, was charged $304 in bank fees for attempting to deposit bad checks and maintaining a negative account balance, all because Mr. Aguilar Lemus didn't pay her. (ECF Nos. 52-2, ¶ 13; 52-4 (Bank Statement)). She also attests that she suffered "stress and anxiety" because she was worried she would be "unable to pay [her] utilities or rent," and also experienced "insomnia, loss of appetite and depression[.]" (ECF No. 52-2, ¶ 15). Mr. Aguilar Lemus will be ordered to pay Ms. Orellana $7,717.50 in total.

**IV. Default Judgment Against ACL I and ACL II**

**A.   Standard of Review**

A court may enter default against defendant who "has failed to plead or otherwise defend." Fed.R.Civ.P. 55(a)-(b). The Fourth Circuit has a "strong policy" that "cases be decided on their merits," *Dow v. Jones*, 232 F.Supp.2d 491, 494 (D.Md. 2002) (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), but "default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive

party," *SEC v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D.Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). The well-pleaded allegations as to liability are ordinarily taken as true, but the court must confirm that the plaintiff alleges "a legitimate cause of action" and determine the amount of damages. *Agora Fin., LLC v. Samler*, 725 F.Supp.2d 491, 494 (D.Md. 2010) (citation omitted); *Lawbaugh*, 359 F.Supp.2d at 422.

While the court may hold a hearing to consider evidence as to damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum."  *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001) (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)).  "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed.R.Civ.P. 54(c).  Where a complaint specifies the amount of damages sought, the plaintiff is generally limited to entry of a default judgment in that amount.  *See In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000).

**B.   ACL I**

**1.   Liability**

Although the well-pleaded allegations against a party in default are ordinarily taken as true, that likely is not so in a case like this one, where the defendant answered the same allegations in an earlier complaint.  *See Nouri v. Cnty. of*

*Oakland*, 615 F.App'x 291, 297-98 (6th Cir. 2015) (unpublished) (citing *LaGorga v. Kroger Co.*, 407 F.2d 671, 673 (3d Cir. 1969). The result, however, is the same. ACL I made the same admissions in its answer as those by Mr. Aguilar Lemus. ACL I admitted that it was Ms. Orellana's employer. (ECF No. 13, ¶ 1; *see* ECF No. 1, at 2-3). And, as discussed above, it failed to pay Ms. Orellana the wages required by the FLSA, MWHL, and MWPCL. Ms. Orellana has shown that ACL I violated all three statutes.

   **2.   Damages**

In order to calculate damages, a court "may rely on affidavits or other evidentiary documents in the record to determine the amount of damages." *Quiroz*, 2011 WL 5826677, at *2. The damages against ACL I are established by the same evidence discussed above. The company is jointly and separately liable for $7,717.50.

   **C.   ACL II**

ACL II was served with the first amended complaint but has not responded. Accordingly, all of Ms. Orellana's allegations are deemed admitted for liability.

Under Maryland law, a successor corporation is "a vendee, lessee, or other transferee" in a transfer of "all or substantially all of the assets of a corporation." Md. Code Ann., Corps. & Ass'ns § 1-101(dd)(4), (ee). Ordinarily, a successor "is not liable for the debts and liabilities of the predecessor corporation." *Balt. Luggage Co. v. Holtzman*, 80 Md.App. 282, 290

13

(1989).  But, exceptions exist under Maryland law which are also embraced by the FLSA, MWHL, and MWPCL.  *See Carrillo v. Borges Constr., LLC*, No. 13-cv-0641-GJH, 2016 WL 5716186, at *5 (D.Md. Sept. 30, 2016); *Ergashov v. Glob. Dynamic Transp., LLC*, No. 15-cv-1007-JFM, 2015 WL 13229505, at *5 (D.Md. Nov. 13, 2015); Md. Code Ann., Lab. & Empl. § 3-501(b).  One is relevant here: "the purchasing corporation is a mere continuation of the selling corporation."  *Balt. Luggage*, 80 Md.App. at 290 (citing *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 182-83 n.5 (1973)).

Ms. Orellana alleges a legitimate cause of action that ACL II inherited ACL I's liabilities as its successor.  She alleges:

> [ACL II] was formed to continue the operations of ACL [I] but under a different name. ACL [II] provides the same services as ACL [I] to ACL[ I's] former clients, and uses the same website as ACL [I].  There is no functional difference between the two entities other than the name. . . . ACL [II] has continued to perform the obligations of ACL [I] by providing cleaning and janitorial services to ACL[ I's] customers, which are now ACL [II]'s customers.

ECF No. 28, at 3).[2]  In effect, Ms. Orellana alleges that ACL I's owner, Mr. Aguilar Lemus, simply renamed his business and otherwise

---

[2] Ms. Orellana also alleges "on information and belief" that "ACL [II] assumed all liabilities of ACL [I] including paying the debts of ACL [I] as they came due."  (ECF No 28, at 3).  This is not treated as true because "an allegation made on information and belief does not serve as a reliable foundation upon which to predicate a final judgment." *Educ. Credit Mgmt. Corp. v. Optimum Welding*, 285 F.R.D. 371, 374 (D.Md. 2012) (cleaned up).

14

carried on as if nothing had changed. Escaping liability by "wear[ing] a new hat" is precisely what the "mere continuation" exception is meant to prevent. *See Balt. Luggage*, 80 Md.App. at 297 (quotation omitted); *Odjaghian v. EngagePoint, Inc.*, No. 18-cv-0151-JKB, 2018 WL 3329617, at *5 (D.Md. July 6, 2018) (discussing relevant factors).

ACL II is the successor in liability to ACL I and is therefore liable to Ms. Orellana for the same violations and the same damages award as ACL I, $7,717.50.

## V.  Conclusion

For the foregoing reasons, Ms. Orellana's motions for summary and default judgment will be granted. She will be permitted to file a motion for attorney's fees. Ms. Orellana's breach of contract claim, (Count IV), which overlaps entirely with her wage and hour claims, will be dismissed without prejudice because she cannot recover separately on it. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
